Christian J.
delivered the opinion of the court.
This is an appeal from a decree of the Circuit court of Floyd county.
The main if not the only question, we have to consider, is, whether the said Circuit court erred in sustaining the exceptions taken by the appellees to the commissioner’s report, which in the settlement of the account of the appellant as trustee under the deed of Headen and wife allowed to said trustee a credit of $1,000, which he claims was a part of the trust fund invested by order of the Circuit court in the bonds of the Confederate States.
*300 The appellant Kirby, was trustee in a deed of trust executed by Headen and wife on the 29th day of February 1860, to secure numerous creditors of said Headen. By the provisions of said deed his creditors are divided into different classes, and different and specific property conveyed to secure to the several classes of creditors their several debts, according to their priorities declared in said deed.
In the second class of the debts thus secured was one due to Lane & Tompkins for the sum of $626.02, with interest from 22d September 1859. This debt together with another debt of $800, was secured by the conveyance of certain real estate known as the Tentmire tract and a certain lot and blacksmith shop. These two parcels of land were expressly charged in the hands of the trustee with the payment of these debts. In addition to this specific security upon this real estate there was a provision that out of the proceeds of other property, if the property conveyed specifically for that purpose should, not be sufficient, the balance remaining should be paid before other debts named. Lane & Tompkins assigned their debt thus secured to D. & J. G-oodykoontz, in whose favor the decree appealed from was rendered.
The real estate charged in the deed with the payment of this debt was sold in 1860. The Tentmire tract brought the sum of $557.50, three-fourths of which, $433.11, was paid to the trustee on the 28th July 1861. It is not proved when the balance was paid; but the whole was due in a sound. currency. The blacksmith shop and lot brought $110, and was paid to the trustee in March 1862. It thus appears that at least $543.11, the proceeds of the sale of the specific property dedicated by the grantor to the payment, in part, of this debt, came into the hands of *301 the trustee, not one dollar of which he ever paid over to those entitled to receive it under the deed. But the commissioner’s report further shows (and to this there is no exception,) that there remained, of other property sold and moneys collected, (which were first appropriated to other debts, but the balance to the payment of the Lane & Tompkins debt if the whole should not be paid by the proceeds of the sale of the real estate above referred to,) in the hands of the trustee the additional sum of $390.52, which was also dedicated by the grantor to the payment of this debt. It is thus conclusively shown that o.n the 2d of June 1861 the trustee had in his hands at least $823.11, of the very fund which the deed had charged with the payment of the Lane & Tompkins debt.
The record further shows that this debt was assigned to D. & J. Goodykoontz on the 4th day of June 1860, and on the very day of the assignment David Goodykoontz gave notice thereof to the trustee, and demanded payment of the debt. The trustee declining to pay them, was then informed by Goodykoontz that they would need the money in September following, and expected the debt should certainly be paid then. The trustee Kirby had no further communication with Messrs. Goodykoontz until-January 1863, when he pressed upon them to receive this debt in Confederate money; which they refused.
In April 1863 the trustee Kirby obtained, upon his motion, from the Circuit court of Floyd the following order: “ It appearing to the court that A. J. Kirby, trustee in this cause, has in hand a fund which at present he is not able to dispose of, and the court is not at present advised what disposition ought to be made of said fund, doth order and direct, that said Kirby trustee do invest said funds at interest until the further order *302 of the court, in such manner as he may deem prudent, under the provisions of the act of the General Assembly of Virginia passed March 5th 1863.”
Under this order the trustee Kirby made an investment in Confederate bonds, and now produces a bond of $1,000 which he insists must be received as a credit to the trust fund remaining in his hands; and now gravely proposes to pay, with this bond, the debt due .to the appellees.
This pretension cannot be tolerated for a moment. This court has had occasion, more than once, to construe the act of March 5th 1863. See Campbell’s ex’ or s v. Campbell’s ex’or, 22 Gratt. 649; Crickard’s ex’or v. Crickard’s legatees, 25 Gratt. 410.
In these cases this court has held, that before a party can avail himself of such an investment made under an order of court, he must show affirmatively, that, 1st, the fund he proposes to invest was received in the due execution of his trust; and 2d, that he is not able to dispose of the same, there being no hand to receive it. When these two things concur the investment will be lawful and the party protected; otherwise he will be held liable to make it good. Kow in the case before us neither of these essential requisites are found; but on the contrary, the fund dedicated by the grantor to the payment of this debt was received (except a small part) in June 1861, in a sound currency, and so far from there being no hand to receive it, the appellees were pressing for payment at that very time.
Much stress is laid, in the. argument of the learned counsel for the appellant, upon the fact that the order referred to, directing an investment, was not an ex parte order, but one made in a pending cause; and that therefore it is binding on the parties, and cannot now be reviewed. Precisely the same question was raised *303 In Grickard’s ex'or v. Grickard, supra, and decided, by the unanimous opinion of this court. In that case, as in this, the trustee filed a bill asking for a settlement of his accounts and the advice of the court as to a distribution of the fund. There, as here, the account was settled under the supervision of the court and distribution directed under its decree. There, as here, in 1868 by a decree entered in the pending cause an investment in Confederate bonds was made. But in that ease, as in this, it was shown that the fund received by the trustee was in a sound currency, and that he might have disposed of it at the time it came into his hands. And this court compelled the trustee to make good the investments thus made.
The difference between that case and this is against the appellant. As to these appellees, the order of the Circuit court of Floyd was ex parte. They were no parties to the suit. The Lane & Tompkins debt had been assigned to them, and notice of that assignment had been given to the trustee on the very day the assignment was made.
The order of April 1863, made in their absence, and without notice to them was purely ex parte and cannot bind them, even if valid as to others; which we have seen it was not.
The Circuit court was right in striking out the item of credit of §1,000 allowed by the commissioner, and thus sustaining the exception of the appellees. Striking out this item the commissioner’s report shows that there is in the hands of the trustee (after all debts of prior dignity under the deed have been fully paid) a sum amply sufficient to pay the appellees’ debts. To this report there was no exception by the appellant except as to the war interest, which exception was sustained. If there be any errors in the commissioner’s *304 report the appellant has failed to show it or even to object to it, except to the interest accrued between the 17th April 1861 and 10th April 1865. -
Upon the whole case the court is clearly of opinion, that there is no error in the decree of the Circuit court of Floyd, and that the same should be affirmed.
Decree aeeirmed.