Anderson, J.
When this cause was formerly before us, we held (McVeigh & al. v. The Bank of the Old Dominion, 26 Gratt. 852), “that the notices addressed to William N. McVeigh, and delivered to his white servant at his residence in Alexandria, and the notice delivered to Ramsey at the Bank of the Old Dominion, under the facts and circumstances disclosed by the record, were insufficient in law; and that for reasons set forth in the opinion, the court below erred in refusing to give the defendant’s third instruction, which is in these words: ‘If the jury believe from the evidence aforesaid (the evidence in the cause), that the only notice of the non-payment and dishonor of the notes sued on given to him by William R. McVeigh was the notice contained in the notarial certificate of protest, then said notice was invalid and inoperative to hind the said William R. McVeigh, and they must find for him.’ And also that it erred in overruling the defendant’s motion for a new trial. And it was considered by the court ‘that the judgment of the corporation court of the city of Alexandria be reversed and annulled, the verdict of the jury set aside and a new trial awarded the plaintiff in error.’ And the cause was ‘remanded to said corporation court for further proceedings therein’ in conformity with the principles herein declared, and in the opinion of the court, filed with the record.”
Rothing can he clearer, therefore, or more certain, than that it was decided by this court in this cause, when it was here before, that the notarial protests and notices were insufficient in law to fix a liability in law upon the endorser, William R. McVeigh, and that “it was incumbent upon the defendant in error (the bank, now plaintiff’ in error,) within a reasonable time after communication was restored between the parties by the termination of the war, to give the endorser notice of the non-payment and dishonor of the notes in contro *554 versy, which were endorsed by him for the accommodation of the makers.” "We have no doubt thft these points were rightly decided, as 'we think is shown by the opinion which was delivered in support of the decision to which we refer, and which on the main point we think is sustained by the supreme court of the United States in the more recent case of Earle v. McVeigh, 1 Otto U. S. R. 503.
But the only question which has not been decided, and which is now properly before the court for its determination is, has such notice been given to the endorser since the termination of the war, in a reasonable time, as was held to be requisite by the former judgment of this court in this cause ? The points thus decided cannot be re-examined. After the cause was decided, the then defendant-in error (the bank) moved the court for a rehearing, which was overruled, there being no doubt in the mind of anyone of the judges who concurred in the decision that it ivas right. And to allow the plaintiff' here to litigate the points which have been decided, would be to give him a rehearing now, which was refused when asked for in time. There ought to be an end to controversy. “According to the established rule of this court, these points are to be taken as settled law in this examination, and the question is, whether the case, as now presented to us, is beyond their influence,” as was said by Carr, J., in Bank of the Valley v. Stribbling, ex’or, 7 Leigh 26. In Chahoon’s case, 21 Graft. 822, it was held that a decision which had been made in the first trial upon a question in the cause, although by an equally divided court, was •final and irreversible on the second trial, and could not be changed even if the court were disposed to change it; Moncure, P., delivering the opinion. And in the case of Campbell’s ex’or v. Campbell’s ex’ors, 22 Gratt. 649, Moncure, P., reviews the decisions of this court *555 on tlie subject, and deduces from them the same doctrine, whether the decision ivas made upon an appeal from an. interlocutory or final decree of the circuit court It is also the established doctrine in the supreme court of the United States. In a recent ease (Supervisors v. Kennicott, 4 Otto U. S. R. 498), Chief Justice 'Waite, speaking for the whole court, said: “It is settled in this court that whatever is decided here upon one appeal, cannot be re-examined in a subsequent appeal of the same suit. Such subsequent appeal brings up for consideration the proceedings of the circuit court after the mandate of this court.” This opinion he fortifies by a reference to numerous decisions of that court. But why make further references in support of a rule which has been uniformly acted on by this court, and which is in conformity with established principles ? There is nothing m the case, as now presented to us, which takes it beyond the influence of this well established principle. The record of the second trial shows no new facts, or change of circumstances, which have the slightest bearing on the aforesaid decision.
At the second trial the plaintiff submitted a series of propositions, in the shape of instructions, and moved the ■court to give them to the jury. Of the fifteen instructions thus tendered, the court gave the 15th and rejected the fourteen. All of them, from Ho. 1 to Ho. 8 inclusive, and Ho. 14, controvert the foregoing decision of this court, not upon any new evidence which had any bearing upon the question, but upon grounds wdflch wrere as cognizable by the court then as now, and ivere doubtless considered by the court, as far as they were entitled to consideration, or to have any influence in the formation of its opinion. The attempt to introduce political questions, and to create issues between this court and the [Federal court, wdflch could have no further influence *556 upon the decision now than before, as no new fact has been brought into the record on those subjects, cannot' be sustained. The court before refused to give any opinion on the constitutionality of the ordinance of secession, as it does now—such question being irrelevant and not involved, as we think, in the decision of the cause. The decision of this court would be the same, whether it held the said ordinance of secession to be constitutional or unconstitutional. For the grounds of our decision, we refer again to the opinion heretofore referred to. 26 Graft, supra. All these matters which were foreign to the questions in issue, and all the argumentation and enunciation of principles in the aforesaid instructions, were offered in contravention of the decision of this court; and for this cause, if there were no-other, the court below very properly refused to give them to the jury.
The 9tli and 12th instructions relate to the notice, required by the former judgment of this court, to have been given in a reasonable time after the cessation of hostilities, &c. And the question, has such notice been given, is a proper subject for consideration now.
To show that it was given, the plaintiff exhibits a resolution which was adopted by a meeting of stockholders of the bank, which was held in Alexandria on the 18th of July, 1865. The resolution is in these words:
“Resolved, That the notes purporting to have been paid at the Pearisburg branch, but which constitute a part of the assets of this mother bank, are deemed by this meeting as still due to it, and the president and directors, now about to be elected, be requested to take such legal proceedings against the drawers and endorsers to recover the same as they may find for the true interests of the bank.”
*557 Is this a notice to William H. MeVeigh ? Is it a notice of the non-payment and dishonor of the notes which are the subject of this controversy ?
It is not a notice to William H. McVeigh at all. Ilis name is not mentioned. ’ It does not seem to have been intended, and evidently was not, as a notice to him. If the bank had intended it as a notice to him, it would have been actually served on him before he left the city. Or if it had been the intention to give him notice, the president and directors, as soon as they were elected, would have had notices prepared of the non-payment and dishonor of the notes, and had them regularly served on him. It seems to have been intended as a communication to the president and board of directors to be elected; that it was the opinion of the meeting that a certain class of notes were still due to the bank, and an instruction to them to take suchdegal proceedings for their recovery as they may find will be for the true interests of the bank.
It is rather a direction to the board for inquiry. There is no positive decision that it would be to the interest of the bank to institute legal proceedings, and no positive direction to the board to bring suit. But if the resolution had been put in the hands of William H. McVeigh, or if its contents had been brought to his knowledge, it is granted that it would have put him on inquiry, whether the bank intended to dispute the payment of the notes which he had endorsed, and w’oulcl look to him for payment. But it is not pretended that the resolution wras put in his hands, or a copy of it served on him by the bank, but that it had incidentally come to his knowledge that the bank had adopted such a resolution. Would that be such a notice as is required to fix his liability as an endorser?
Ho precise form of words are necessary to constitute a notice. But there are three requisites, Mr. Justice Story *558 says: “1st. A true description of tlie note, so as to ascertain its identity. 2d. An assertion that it was duly presented to the maker at its maturity and dishonored; an<l, 3d. That the holder looks to the endorser for reimbursement and indemnity.” Story on Prom. Hotes, § 348. The second requisite could not be complied with in this-case. lie was excused for not complying at the time by the war. His duty to give notice—this second requirement—was only suspended until the obstructions caused by the war were removed, and then, all the authorities-say, that in a reasonable time after they are removed, he must give the notice. Hotice of what, if not of the nonpayment and dishonor of the note, and that he was looked to for payment ? Hotice is not dispensed with by the' war. The requirement to give it at the nvxturity is all that is dispensed with. The requirement to give the notice is only suspended until the obstruction to giving-it is removed. And this is all; and is necessarily so, as the giving of the notice is a precedent condition to the liability of the endorser. Hnless the notice implied by the contract is given to him, he is not liable. The holder of the note may be excused by the existence of war from giving the notice as promptly as the law merchant requires, but he is not excused from giving the notice-when the cause which prevents it is removed; for until he gives it, the liability of the endorser is not consummated. There can be no good reason, therefore, why the notice, when it- is given, should not comply with all the requisites of the law merchant, except as to the time of giving it. The notice may be given in a reasonable time after the obstruction is removed; but when given, it must be such a notice as would have been required to have been given at the maturity of the note, if there had been no suspension of the contract by war, or excuse for not giving it at the maturity of the note.
*559 But it is contended that he had knowledge of the nonpayment and dishonor of the notes both at the maturity, and in a reasonable time after the cessation of hostilities, which is equivalent to notice. This subject is fully discussed in the opinion referred to, delivered in this cause, and will be found on page 847, and the following pages of 26 Graft, to the close of the opinion. The additional light thrown upon either proposition does not alter the conclusions to which we then arrived, but tends to confirm them; that is, that William R. McVeigh had not a knowledge that' the said notes had been protested at their maturity, or of their non-payment and dishonor, at the close of the war, or m a reasonable time thereafter, even if his knowledge would excuse the bank from giving notice; which we think it would not. Knowledge of dishonor does not constitute notice. Juniatta Bank v. Hale, 16 Serg. & R. 157; Caunt v. Thompson, 62 E. C. L. R 399; Tindall v. Brown, 1 T. R 169; Brown & Sons v. Ferguson, 4 Leigh, 37, 52-53; Story on Bills, § 375; Story on Prom. Notes, §§ 367 and 286.
But if it were conceded that knowledge by the endorser of the non-payment and dishonor of the notes, and that the bank looked to him for payment, was sufficient, and that the resolution aforesaid ivas communicative of such knowledge, it would still have to be shown that the said resolution had been communicated to the endorser, or that He had acquired a knowledge of its contents, and that such knowledge was communicated or acquired in a reasonable time after the cessation of hostilities and the restoration of correspondence.
■Richmond was evacuated on the 3d of April, 1865, and in a short time thereafter there was regular communication between that city, where the endorser resided, and Alexandria, the domicil of the bank. From the day of the surrender of General Lee, on the 9th of April, *560 there was no organized opposition to the government of the United States in the state of Virginia (Code of 1873, p. 22). The seat of the restored government, as it was called, was transferred from Alexandria to Richmond on the 23rd of May, (Ibid, page 23) and the whole state submitted to it. On that day "William R. McVeigh was in Alexandria, and was in correspondence with the bank, as is shown by his letter of that date, tendering to the board of directors his resignation of the office of president, and their non-acceptance of his resignation. What was there to have prevented service at that time of the notice which was necessary to fix his liability ? Was it due diligence ? Was it reasonable to delay two months longer before giving him an intimation that the notes, which he believed were paid by the makers were still due, and that the hank looked to him for payment, taking the resolution adopted on the 18th of July as equivalent to notice ?
But was he notified of that resolution, or had he knowledge that said resolution had been adopted at the meeting of the stockholders? It is not pretended that the bank ever notified him of it. But the plaintiff relies on the fact that he was present at the meeting and participated in its proceedings, to prove that he had knowledge of the resolution. The newspaper report of the proceedings of the meeting, which the plaintiff offered evidence to prove was accurate, shows that William R. McVeigli was present at the meeting and participated in proceedings in relation to another matter in which he was deeply interested, but does not show that he was present after that matter was disposed of, when the resolution in question was offered, or when it was considered aud adopted. But it does show that he took no part in that proceeding.
Row it is fair to presume that if he had been present and was aware of it, he would not have allowed a resolution to pass sub silentio, which so seriously affected his interests, *561 and which assumed a position which he did not believe to be correct, as is shown by his strenuous resistance to it, circuit when afterwards brought to a legal test in the •court, presided over by a distinguished judge, who sustamed Mm; though the act of the legislature, under authority of which the makers had paid the notes, was long years afterwards held by a majority of this court to be unconstitutional. We say it is fair to presume that he would not have remained silent and acquiescent, but that he would have made an effort to prevent its adoption, as he had done in the other matter affecting him. The presumption is that he was not present when the resolution was offered and passed, or at least that he -was not aware of it, as he did not oppose it. The presumption is conclusive in the absence of positive testimony to the contrary. There is no proof that he was then present, or that he knew of it; but there is positive proof to support the presumption that he did not know of it. His own testimony introduced by the plaintiff, proves positively that he had no knowledge of said resolution. And it is further proved by him and James H. McVeigh, for the defence, “that no demand was ever made upon them for the payment of said notes, and that no notice was given them that they were held bound for the payment, until and except as they were served with notice in this suit.”
How, the 9th and 12th instructions tendered by the plaintiff are fatally defective in this, that they in effect not only charge the jury to draw an inference from a fact, (the presence of William H. McVeigh at the meeting), which is not sufficient to warrant such inference, (but, as we have shown, is contrary to the natural presumption,) but also to disregard the positive testimony. The court did not err, therefore, in refusing to give them to the jury.
*562 There is another ground upon which the learned couusel i'or the plaintiff relies as presumptive evidence of knowledge: that said McVeigh was president of the. hank. It is trae he was president when he abandoned pjg residence in Alexandria and crossed the belligerent lines, and never resigned his office until the 23d of May, 1865, and that he attended to some matters of the bank, in that capacity, within the Confederate States, which were after the war disclaimed by the bank. But to infer from the foregoing, and from the duty of the president “generally to superintend, and diligently to attend to the business of the bank,” that he had knowledge of the nonpayment and dishonor of the notes in controversy, and that the bank looked to him for payment, when the fact is palpable on the face of the record, that he was separated from the bank by hostile armies during the whole period, and that the said duties of president could not be, and were not, performed by him, is to close the eyes to the facts, and has not even the show of plausibility. The inference is at least as illogical as the proposition we have just disposed of.
The 10th instruction is not law, nor adapted to the facts of the case, and was calculated to mislead the jury. The court might properly have reversed it, and instructed the jury that though the endorser had knowledge at any time during the war that the notes were dishonored and protested, but that the amount, of said notes was after-wards paid at Pearisburg in 1864, in Confederate money, as authorized by act of the • legislature of the state, although years afterwards said law was adjudged to be unconstitutional, and that said endorser believed that said payment was valid, and had no knowledge that the bank claimed to the contrary prior to the adoption of the resolution at a meeting of the stockholders on the 18th of July, 1865, referred to (if he had any knowledge then, *563 which he denied), between three and four months after * . the cessation oí hostilities in this state, and after communication had been restored between his residence and the domicil of the bank, and nearly two months after he was in Alexandria, on the 23d of May, 1865, and in actual correspondence with the bank, although he was present at the meeting which adopted the said resolution and took part in its proceedings, but took no part in the proceedings when the resolution aforesaid was adopted, and that there is no proof that he was then present, but positive proof that he had no knowledge that the meeting had adopted any such resolution, and that the first knowledge that he had that the bank repudiated the said payment at Pearisburg and looked to him for the payment of said notes, was the service of process in this suit; the jury should find for the defendant. The instruction tendered is also objectionable in deducing its conclusion from an alternative hypothesis, that he had been informed by ofiicevs of the bank when there is not a scintilla of evidence to support such ah hypothesis; and, indeed, the other alternative hypothesis, that he was notified by said resolution, is wholly unsupported by- the evidence. This instruction, as well as others, was ingeniously framed, and was calculated to confuse and mislead the jury, and was properly rejected by the court.
There is no evidence in the cause of which the 11th instruction can be predicated, aud as the court was not bound to enunciate abstract principles of law, whether the instruction correctly asserted the law or not, of which this court does not deem it proper to express an opinion, the court below did right to refuse to give the instruction.
If the court erred in not giving the 13th instruction, the plaintiff is not prejudced by it, inasmuch as the finding of the jury and the judgment of the court is in conformity with it. This disposes of all the plaintiff's fifteen *564 instructions. The defendant only tendered one instruction which was given by the court, and we think properly, as is shown by the views which we have already expressed. This disposes of all the instructions, and of the plaintiff’s third exception.
The court is of opinion that there is no error in the rulings of the court as set out in the plaintiff’s 1st and 2nd bills of exception, and upon the whole to affirm the judgment of the court below, with costs.
Staples and Burks, J’s, concurred in the opinion of Anderson, J.
Moncure, P., and Christian, J., dissented.
Judgment aeeirmed.