Christian, J.,
delivered the opinion -of the court.
The only question brought up by appeal in this case, is whether the appellant, Richard H. Carter, is entitled to a ■credit upon the settlement of his executorial account to the amount of $5,878.20, alleged to have been invested by him for thuestate he represented in bonds of the Confederate States. The following facts are disclosed by the record : Bladen Dulaney, of the county of Fauquier, departed this life in the latter part of the year 1856, seized and possessed of a large real and personal estate, having first duly made and published his last will and testament, which was admitted to probate in the county court of Fauquier on the 27th day of January, 1857. The will was written by the appellant, Richard H. Carter, and he was appointed sole executor under the will, with the express desire and request on the part of the testator that he should not be required to give security for the performance of his duties as such executor. He accordingly qualified as executor, without security, before the county court of Fauquier, on the 27th January, 1857.
The will of the testator contains the following directions to his executor (after providing for an annuity of ■$600 to his wife), viz: “ But, if after the payment of my debts and funeral expenses, there shall be money unexpended, whether the same be arreas of pay or derived from the sale of my crops, cattle, farm stocks or farming utensils, then it is to be invested at the discretion of my *194 executor, and the interest accruing thereon applied to the payment of said annuity,” &c.
It appears by the accounts settled by the executor, that on the 25th January, 1859, there was in his hands due the estate the sum of $5,688.48, and on the 25th January, 1860, the sum of $4,991.84. For this last amount he was a debtor to the estate on the 25th January, 1860. It was plainly the' duty of the executor to have invested that amount in a safe interest-bearing security to meet the annuity provided by the will. There was the highest obligation on him to do this. lie was the confidential friend of the testator. He was selected and sent for to-write his will. He was appointed the executor, with the “request and earnest desire” that no security should be required by the court of probate. Such confidence ought to have been scrupulously respected, and the wishes of the testator faithfully and diligently executed.
The object of the investment was to aid in providing an annuity for the widow of the testator. It is true that the investment was to be made “ at the discretion of the-executor,” but the investment was to be made of moneys in his hands after the payment of debts and funeral expenses. On the 25th of January, 1860, certainly, if not before, every debt due from the estate had been fully paid, and there wTas in the hands of the executor on that day, subject to be invested under the directions of the will, the sum of $4,991.84. This large amount was then in his hands, and ought then to have been invested under the directions of the will of the testator. From that day he became a debtor to the estate, and must be regarded as a borrower of the fund. The excuse which the executor now attempts to make for not then making an investment is, that a suit was pending against him brought by the widow, and he was awaiting the termination of that suit in order that he might ascertain the exact amount which he could invest for the purposes of the annuity provided *195 by the will foi’ the widow. The record in that case is not printed in the record of Carter v. Dulaney, now before us, but by consent of counsel at the bar it was agreed - that the court should inspect the manuscript record of the case of “ Caroline Dulaney v. Carter, ex’or,” as if it was made a part of the record in the case before us. ' An inspection of the record in that case shows that the bill ivas filed by Mrs. Caroline Dulaney in order to get a construction of her husband’s will in regard to certain furniture' bequeated under the wall to her—whether she was entitled only to the .furniture in the house which the testator occupied at the time of his death, or to all the furniture belonging to him’, some of which was then in other houses which he owned. This was the principal matter of controversy in that suit. There was one other matter of minor importance upon which the court was asked to pass. It was this: The testator had directed in his will that the sum of $1,500 should be applied to repairs on one house 'at Mount Alburn, one of the farms of the testator; the repairs made, according to the estimate of the architect employed, was more than $1,500; and the question was, whether this additional amount was to be paid out of the estate or by Mrs. Dulaney. This amount, which was only $133.87 (interest added), was paid by the executor on 27th March, 1858, as per receipt filed by him in said manuscript record. This suit terminated in September, 1861, by the dismissal of the plaintiff’s bill. The real controversy in the case was (outside of the small amount of $133.87, which the executor paid, and for which he received credit), whether the widow of the testator was entitled to all the furniture left by the testator, or only to that which was in the house in ’Washington, in which the testator lived at the time of his death. The decision of this question, nor of that of the repairs to the “Mount Al-burn” property, amounting to only $133.87, could notin any manner affect the obligation of the executor to invest *196 the sum of $5,000 in round numbers, which he admits was M Ms hands on the 25th January, 1860. For does pendency of such a suit, for such a purpose, not at all affecting the fund in his hands, furnish him any valid ex-euse Mr retaining the funds belonging to the -estate, without investing them according to the provisions of the will. For this amount, then, he stands as debtor to the estate and borrower of the fund. After the close of the war he seeks to discharge this indebtedness, on settlement of his executorial account before a commissioner, by producing certain Confederate bonds. And the order of Judge Meredith of the circuit court of the city of Richmond, date December 6th, 1864, which recites that “ on the petition of Richard H. Carter, executor of Dladen Dulaney, deceased, this day filed by his attorney, the court doth order that the said Richard H. Carter, executor as aforesaid, have leave to invest $5,900 (the amount stated by him in his petition to be in his hands in his fiduciary -character aforesaid), in interest-bearing bonds or certifi■cates of the Confederate States,” &c., &c. Under this order the investment was not made until the 11th February, 1865, when Confederate money as compared with .gold was as 1 to 55; so that the sum of $5,900 was worth only the sum of $92.54. It therefore appears that the executor in this case having in his hands in January, 1860, nearly $5,000 in gold, or its equivalent, which he was directed by the will of his testator to invest so as to-produce an annuity for the widow (which it was his duty then to invest), offers before a commissioner, as a satisfaction of this gold debt, Confederate bonds purchased in February, 1865, representing $5,900, but worth only $92.54. The right to make such payment'is urged upon ■the ground that the investment was made by a court of -competent jurisdiction.
It is sufficient to say that this investment was made mnder an ex parte order upon a petition which is not *197 before ns. But it is impossible to conceive that the learned and able judge then presiding in the circuit court of the city of Richmond, would have made the order which he did if he had known that the fund which this executor desired to invest in Confederate bonds was received by him in January, i860, and that he was thereby discharging a debt which he himself owed to a widow and orphans of $5,000 and upwards, by turning over to them a Confederate bond worth only the insignificant sum of $92.54.
The order of the circuit court was obtained on an ex-piarte petition by the executor under the act of March 5th, 1865. That act has been more than once construed by this court. See Campbell’s ex’ors v. Campbell’s ex’or, 22 Gratt. 649; Crickard’s ex’or v. Crickard’s legatees, 25 Gratt. 410. In these cases it -was held that the act expressly provided that ivhenever a-fiduciary had in his hands moneys received in the due execution of his trust, which, from the nature of his trust, or from any other cause whatever, he was unable to pay over to the parties entitled thereto, or to dispose of the funds in accordance with the directions of the instrument creating the trust, it should be lawful for him to apply by motion or petition to any judge of a circuit court for instructions to invest the fund thus remaining in his hands; and it was further held that before a party can avail himself of the provisions of this act three things must concur: 1st. He must have in hand the same money, or its equivalent in value, which he received in his fiduciary character. 2nd. He must have received the currency which he proposes to .invest in the due exercise of his trust; and 3d. He, for some cause, must be unable to pay it over to the parties entitled, or invest it in accordance with the directions of the instrument creating the trust. In the case before us no one of these three things existed. The money which he had in hand in December, 1865, was Confederate *198 money, almost worthless, and not that which he acknowledged was in his hands in January, 1860, was gold or its equivalent. The currency which he proposed to invest was not received in the due execution °f Twsi, for he admits he did not receive one dollar belonging to the estate after January, 1860, a period of more than a year before the establishment of a Southern Confederacy, and nearly two years before Confederate-currency was in circulation. The fund in his hands, so far from being in a condition that it could not be invested under the will creating the trust, might have been and ought to have‘been invested any time after January, 1860.
The court is therfore of opinion that upon the principles declared in Campbell's ex'ors v. Campbell's ex'or, and Crickard's ex'or v. Crichard legatees (supra), and numerous other cases since decided by this court, down to the case of Patteson v. Bondurant's ex'or, decided very recently, and in which case the many cases on this subject are collected and referred to in the opinion of Judge Anderson, that the executor cannot discharge himself from a gold debt contracted in January, 1860, by a Confederate bond, purchased by him with Confederate money in February, 1865, and depreciated at the rate of fifty-five dollars to one. (See also the opinion of Judge Burks, in Cole's committee v. Cole’s ad'mr, 28 Gratt. 365.)
But it is claimed in this case by the executor that while he made no investment, in the name of the estate he represented, of the funds in his hands, until February, 1865, yet, in April, 1862, he did invest the sum of §5,900 in eight per cent, coupon bonds, and that he intended and regarded this investment as made for the estate. How, if in point of fact the executor (though he was in default for more than two years in making the investment required by the will), in the exercise of the discretion reposed in him by the will, had, as early as *199 April, 1862, investee! the money in his hands belonging to the estate in Confederate bonds, and marked and designated these bonds as the property of the estate, he would certainly have had a much stronger case and have stood upon much higher ground in a court of equity. JBut it is not pretended that the moneyiwhich he invested in April, 1862, was the money of the estate, or that the bonds taken were in any way marked or designated as bonds due the estate. They were his own bonds, bought with his own money. If he had died these bonds would have been the property of his estate and not that of .Bladen Dulaney. It matters not that he intended they should stand as an investment for Dulaney’s estate; the bonds themselves should have been so set apart and designated. They were not so set apart. The whole defence of the executor in this case stands alone upon his own deposition; and upon his own evidence it is shown that the investment in April, 1862, was not made in the name of or for the benefit of the estate, as appears from the following extract taken from his deposition:
“Fourth question by same. You have stated that yon received no money of the estate after the 25th of January, 1860; please state whether the amount in your hands on that day remained in your hands in kind until the investment you refer to, in April, 1862; if not, what became of it ?
“Answer. I did not keep it separate from my other means. I did not keep a separate account of a deposit in bank of that specific amount, but had an amount, or nearly so, at all times on hand sufficient to settle the balance due. I had either an equivalent amount on hand or at my call during the whole time.
“Fifth question by same. With what sort of funds did you buy the Confederate eight per cent, coupon bonds ?
*200 “Answer. My impression is that it was almost exclusively Virginia bank notes, and a cheek on the Ex-Bank of Virginia,
“ Sixth question by same. In what funds were checks 011 the bank paid in April, 1862 ?
“Answer. I do not recollect; I did not draw the money myself upon the check.
“ Seventh question by same. Was there anything about the coupon bonds purchased in April, 1862, to indicate that they belonged to the estate of Bladen Dulaney ?
“Answer. There was no such mark or endorsement on the bonds ?
“ Eighth question by same. Where were the coupon-bonds which you say you purchased for yourself about the same time; if you have them please file them with, your deposition ?
“Answer. I have a portion of them which I will file; a portion I left with a friend in- Orange county during-the war, and since the war I have never called for them (abour $2,000). I had about the same amount burned up in my trunk with the wagon train at Amelia C. H., in April, 1865.
“ Einth question by same. Was there anything on the face of these last-mentioned bonds, or endorsed on their-back, to distinguish them from the bonds for $5,900 ?
“Answer. I do not recollect that there was.”
It is a significant fact, showing that the executor, himself did not regard the investment made by him in April, 1862, as made for the estate, that he invested the-same amount in February, 1865, under the order of the circuit court of Richmond, in his name as executor of Bladen Dulaney, and that when called upon to settle his executorial account before a commissioner, he produced the bonds purchased in February, 1865, and claimed that *201 these bonds were in full discharge of his indebtedness to the estate of his testator.
Upon the whole case we are of opinion that there is no error in the decree of the circuit court of Fauquier, and that the same he affirmed.
Decree affirmed.